**AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, a corporation, and Bender Welding & Machine Co., Inc., a corporation, Plaintiffs,**

**v.**

**Raymond E. NEUMAN, Deputy Commissioner, Seventh Compensation District, Bureau of Employees' Compensation, U. S. Department of Labor and Theodore R. Tew, Defendants.**

**Civ. A. No. 5237–68–T.**

United States District Court,
S. D. Alabama, S. D.

Dec. 30, 1969.

W. Boyd Reeves, Armbrecht, Jackson & DeMouy, Mobile, Ala., for plaintiff.

Vernal R. Jansen, Jr., U. S. Atty., and Ross Diamond, Jr., Mobile, Ala., for defendants.

DANIEL HOLCOMBE THOMAS, Chief Judge.

This is a suit to enjoin and set aside a compensation award made under the Longshoremen's & Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950. Bender Welding & Machine Co., Inc. (hereinafter referred to as "Bender") and American Mutual Liability Insurance Co. (hereinafter referred to as "American Mutual"), Plaintiffs, have filed a motion for summary judgment and Defendants, Raymond E. Neuman, Deputy Commissioner, Seventh Compensation District, Bureau of Employees' Compensation, U. S. Department of Labor (hereinafter referred to as "Deputy Commissioner") and Theodore R. Tew, injured employee of Bender, have filed a cross motion for summary judgment.

The facts giving rise to this action are not in serious dispute. Bender is engaged in the construction and repair of vessels, and their construction facilities are entirely separate from the repairing facilities. Theodore R. Tew was employed by Bender as a shipfitter. On March 7, 1967, Tew, in the course of his employment, was working on the construction of new hull situated on the building way or launching way when he fell through a hole in the uncompleted hull. He sustained a fractured skull with exhadural hematoma, requiring surgery and is still permanently and totally disabled.

The hull was thirty to forty percent completed, was located on the building way and was unlaunched at the time of the accident in question. The launching way or building way is a permanent structure of two rails running from a shed on land to the Mobile River and is used exclusively for the construction and subsequent launching of newly constructed vessels. There is a hump on the launching way which facilitates the construction of new vessels, this hump makes the building way unsatisfactory for taking vessels out of the water. There are no facilities (wench, proper cradles, etc.) on the building way to remove a vessel from the water; conse-

quently, the launching way in question has never been used to pull a boat or barge out of the water. It would take considerable modification to convert the building way into a marine way in order to remove a vessel from the water. The marine way which Bender uses when repairing a vessel is located some 200 yards from the building way.

Immediately after Mr. Tew sustained the injuries while working on the hull, American Mutual, as Bender's insurer, commenced payment of compensation to him under the Alabama Workmen's Compensation Law of the State of Alabama. Thereafter Mr. Tew filed claim for benefits under the Longshoremen's & Harbor Workers' Compensation Act with the Deputy Commissioner which was resisted by American Mutual and Bender on the ground that inasmuch as the accident occurred upon land and during the construction of a new hull which had never been launched, the Deputy Commissioner did not have jurisdiction of the claim under the Longshoreman's Act. Following a formal hearing before the Deputy Commissioner on October 9, 1968, the Deputy Commissioner entered an order dated October 23, 1968, wherein he concluded that he did have jurisdiction under the Act and awarded compensation benefits pursuant to the Act to Mr. Tew.

The jurisdiction of this Court to review a compensation order of the Deputy Commissioner is provided by the Longshoremen's & Harbor Workers' Compensation Act, 33 U.S.C. § 921(b).

Section 3(a) of the Longshoremen's & Harbor Workers' Compensation Act provides:

"Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon navigable waters of the United States (*including any dry dock*) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law." (Emphasis added) 33 U.S.C. § 903(a).

The basic issue involved is whether a building way, which is used exclusively in the construction of vessels and subsequent launching and is not used to remove a vessel from the water, falls within the statutory meaning "any dry dock" under § 3(a) of the Longshoremen's & Harbor Workers' Compensation Act. If the building ways are not within the meaning of "any dry dock" then the Deputy Commissioner was without jurisdiction in granting the aforesaid compensation award under the Longshoremen's Act and Mr. Tew would be covered under the Workmen's Compensation Act of Alabama.

Justice Douglas comprehensively defined "dry dock" in his concurring opinion in Avondale Marine Ways, Inc. v. Henderson, 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77 (1953) affirming an appeal from the Fifth Circuit Court of Appeals as follows:

"There are three kinds of dry docks. (1) A floating dry dock, as its name makes clear, floats on the water, the vessel resting on the bottom of the dry dock after the water has been removed. (2) A graven dry dock is dug into the land. The vessel floats in but rests on land once the water has been pumped out. (3) Finally there is the marine railway, on which the vessel is drawn out of the water, instead of the water being drawn away from the vessel. A ship is no more and no less on land when it rests in a graven dry dock than when it rests on a marine railway. The three types of dry docks are not different in kind; functionally they are the same." At 367, 74 S.Ct. at 101.

The Fifth Circuit Court of Appeals in Travelers Insurance Company v. Shea, 382 F.2d 344 (5th Cir. 1967) defined dry docks in the following manner:

" * * * dry docks, which are located on navigable water *are used to raise the ship out of the water* to permit examination or repair to its hull impossible while the ship is afloat. * * * " (Emphasis added) At 347.

"A dry dock *lifts or shifts the ship*. If it is to be a marine railway, it is hoisted upon land." (Emphasis added) At 349.

The Ninth Circuit Court of Appeals in O'Leary v. Puget Sound Bridge & Dry Dock Co., 349 F.2d 571 (9th Cir. 1965) made the following distinction between building ways and dry docks:

"Without reviewing maritime history, we may safely assume that building ways, upon which to construct ships and from which to launch them, necessarily antedated any form of dry dock in or upon which to repair the ships once constructed." At 573–574.

A dry dock function is different from that of a building way. The courts have interpreted that the functional purpose of a dry dock is to pull or raise a vessel from the water to examine or repair it. A building way is used solely for the construction and subsequent launching of a new vessel as in the case at Bar.

The Deputy Commissioner stated in his order that "the launching ways were (are) sufficiently similar to other structures included in the comprehensive term 'dry dock'" within the meaning of the Longshoremen's Act. Granted, at first appearance a shipbuilding way might look similar to a marine railway; however, when applying the statutory meaning "dry dock" one must also consider its usage, function and purpose. It is true a dry dock may also be used when constructing a new vessel. In fact some authorities indicate that a floating dry dock or graven dock is better than building way "to avoid the strain of launching" on the hull. Charles B. Stuart, Naval Dry Dock of the United States (N.Y.1852), Part II, Page 10. However, this fact situation is not before the Court.

The government in its brief for the Deputy Commissioner made the following quote from Navdock DM–30, April 1963, p. 30–3–1, which clearly shows the Navy recognizes a distinction between building ways and dry docks.

"U. S. Naval installations which have dry docks available will generally make use of them for shipbuilding but private shipyards, even those building ships under Navy contracts, may elect to use shipbuilding ways because of the initial investment involved. A dry dock, a shipbuilding basin (as a shallow dry dock is sometimes termed), has many advantages over shipbuilding ways if the original cost may be written off through sufficient usage."

The scope of coverage intended by Congress under the Longshoremen's and Harbor Workers' Compensation Act is clearly set out in the following quotation from the Senate Report on the Act.

"The purpose of this bill is to provide for compensation in the stead of liability, for a class of employees commonly known as 'longshoremen'. These men are mainly employed in loading, unloading, refitting, and repairing ships; but it should be remarked that injuries occurring in loading and unloading are not covered unless they occur on the ship or between the wharf and the ship so as to bring them within the maritime jurisdiction of the United States." S.Rep.No.973, 69th Cong. 1st Sess. at Page 16.

There is no language indicating any Congressional intent whatsoever to include ship building employees, which have traditionally been considered a nonmaritime activity, within the coverage of the Longshoremen Act. "There is nothing in the legislative history of this Act (Longshoremen's Act) to indicate that the Congress intended to include a building way on which a new ship was under construction within the meaning of the phrase "any dry dock" (cite omitted) O'Leary v. Puget Sound Bridge & Dry Dock Co., supra at 574.

In *Puget Sound* the Court was faced with a similar fact situation as the case at bar. That case involved an injury sustained by an employee engaged in new ship construction upon a building way. The building way was a permanent structure located on land and was used

exclusively for new ship construction and subsequent launching. The Court held that the building way did not constitute "any dry dock" within the meaning of the Act. The Fifth Circuit Court of Appeals in Travelers Insurance Co. v. Shea, 382 F.2d 344, 348 (1967), discussed *Puget Sound* stating, "the Court affirmatively imposed a limit to the outer boundaries of the Longshoremen's Act."

The government in its brief cites Port Houston Ironworks v. Calbeck, 227 F. Supp. 966 (S.D.Tex.1964) in support of the Deputy Commissioner's position. The District Court without giving any facts held "the 'building ways' in this case are sufficiently similar to other structures included in the comprehensive term 'dry dock' to sustain the deputy commissioner in his finding of jurisdiction." At 967. This Court is of the opinion that to construe "building ways" so located and used to be a "dry dock" would, I think, as applied to the case at Bar, be repugnant to the Congressional intent and the interpretation of the Supreme Court and Fifth Circuit Court of Appeals. This Court agrees with the sound reasoning of *Puget Sound*.

Since the nature of shipbuilding is non-maritime and the place of the accident, being on a building way, does not fall within the jurisdiction of the Longshoremen's Act, this Court finds the Deputy Commissioner was erroneous as a matter of law. The statutory presumption of the Act, 33 U.S.C. § 920(a) cannot bring the accident within its coverage where there is "substantial evidence to the contrary". Thus the finding of the Deputy Commissioner must be set aside and Mr. Tew shall be compensated under the Alabama Workmen's Compensation Act.

It is therefore ordered, adjudged and decreed by the Court that Bender's and American Mutual's motion for summary judgment should be and is hereby granted.

Cost taxed against Theodore R. Tew, except attorney's docket fee which is waived by attorney for plaintiff.