COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Petitioner,

v.

DISTRICT OF COLUMBIA COMMISSION ON HUMAN RIGHTS, Respondent, Sally Kraus Marshall, Intervenor.

No. 9406.

District of Columbia Court of Appeals.

Argued Nov. 4, 1975.

Decided Dec. 22, 1976.

---

Matthew A. Kane, Washington, D.C., with whom Charles V. Koons, Washington, D.C., was on the brief, for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., with whom C. Francis Murphy, Corp. Counsel, Washington, D.C., at the time the brief was filed, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Judy Lyons Wolf, Washington, D. C., for intervenor.

Before KERN and HARRIS, Associate Judges, and STEWART, Associate Judge, Superior Court of the District of Columbia.*

KERN, Associate Judge:

This is a petition for review of an order by the District of Columbia Commission of

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

Human Rights (Commission) entered after a hearing and upon a finding of discrimination in employment on the basis of sex by the Communications Workers of America, AFL–CIO (CWA). The order (1) awards CWA's former female employee, one Marshall, some $7,600 in back wages, $7,500 for loss of promotional opportunity, retaliation, humiliation, and mental anguish, and $2,000 in attorneys fees, and (2) directs CWA to develop an affirmative action plan for employment of women.

CWA's challenge to the Commission's order is threefold: first, that the Commission lost jurisdiction to enter the order once Marshall had filed suit in the United States District Court for the District of Columbia pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1970); second, that the evidence adduced at the hearing showed Marshall's failure to advance at CWA stemmed from her lack of ability, industry and specialized education rather than because of discrimination based on her sex; and third, that the Regulation applicable to the proceeding did not empower the Commission (1) to award damages and counsel fees and (2) to order CWA to undertake an affirmative action plan.

■ As to the jurisdictional argument, we note that this case began in 1972 when Sally Marshall, then Kraus, an employee of CWA, filed a complaint of sex discrimination in employment with the Equal Employment Opportunity Commission (EEOC) pursuant to Title VII of the Civil Rights Act of 1964 as amended 42 U.S.C. § 2000e *et seq.* The complaint was referred in accordance with the Act to the Commission where she filed another complaint form. The Commission determined probable cause to exist and ordered a hearing which was held in September and October 1973. While the proceeding was in progress and awaiting decision by the Commission, complainant Marshall was issued a "right to sue" letter in accordance with the Act. 42 U.S.C. § 2000e–5(f)(1). Thereupon, in July 1974 she filed a complaint in the federal district court here. In November 1974 the district court ordered complainant's case "stayed until expiration of the time for noting an appeal of the final order of the Commission . . . or the final disposition of any appeal so taken."

CWA contends (Brief at 12–13) that "[t]he aggrieved employee should have the right *either* to file suit *or* to pursue the administrative remedy, *but not both,* either concurrently or consecutively." (Emphasis added.) Specifically, CWA urges (Brief at 18) that "[b]y obtaining a 'right to sue' letter and filing suit [in the federal district court] before entry of a final order [by the Commission], complainant *effectively divested* the Commission of its adjudicatory function and its power to issue a final order." (Emphasis added.)

Petitioner has referred to us no authority, and we have found none, to support the proposition that one who files an employment discrimination complaint with the EEOC pursuant to the Civil Rights Act of 1964, which complaint is then referred to the complainant's state or local administrative agency empowered to determine employment discrimination claims, divests that agency's jurisdiction over the complaint *merely* by subsequently filing a civil action based on that discrimination in the appropriate federal district court. To the contrary, the Supreme Court has expressly recognized that "legislative enactments in this area [unlawful discrimination] have long evinced a general intent to accord *parallel* or *overlapping* remedies against discrimination" and concluded Congress intended "an individual to pursue *independently* his right under *both* Title VII *and* under *other* applicable state and federal statutes." *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47–48, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974) (emphasis added) (complainant may submit claim to arbitration *and* later bring suit in federal district

court). *See Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L. Ed.2d 295 (1975).

Other appellate courts have approved the *concurrent use of state and federal remedies* in employment discrimination cases and rejected the very concept now urged upon us by CWA, *viz.*, that Marshall was required to make an *election* between local and federal remedies in pursuing her complaint of employment discrimination. *See Batiste v. Furnco Construction Corp.*, 503 F.2d 447 (7th Cir. 1974); *Cooper v. Philip Morris, Inc.*, 464 F.2d 9 (6th Cir. 1972); *Voutsis v. Union Carbide Corp.*, 452 F.2d 889, 893–94 (2d Cir. 1971). Accordingly, we uphold the Commission's jurisdiction to determine her claim.

■ We turn now to petitioner's contention that the evidence does not support the Commission's finding of discrimination on the part of CWA toward its employee Marshall because of her sex and the Commission's conclusion that CWA violated the Regulation forbidding such discrimination. Our function in review obviously is not to weigh the testimony and substitute ourselves for the trier of fact who heard the conflicting testimony, observed the adversary witnesses, and determined the weight to be accorded their testimony. Rather:

[T]he function of the court in reviewing administrative action is to assure that the agency has given full and reasoned consideration to all material facts and issues. The court can only perform this function when the agency discloses the basis of its order by an articulation with reasonable clarity of its reasons for the decision. There must be a demonstration of a 'rational connection between the facts found and the choice made.' . . . The findings must support the end result in a discernible manner . . . . [*Dietrich v. District of Columbia Board of Zoning Adjustment*, 293 A.2d 470, 473 (D.C.App.1972); citations omitted.]

■ Unfortunately, the Commission's findings are inadequate for a meaningful review in this case because they do not, as they should, resolve the basic issues of fact raised by the evidence adduced at the hearing. *Miller v. District of Columbia Commission on Human Rights*, D.C.App., 339 A.2d 715 (1975). In essence, the hearing resolved itself into a conflict between Marshall's supervisors, on the one hand, and Marshall and several fellow employees (including one who had for a time supervised her work), on the other hand, as to the quality of her performance of work and the employment and promotional policies of her employer. One side testified that she was simply not qualified to advance beyond her then position with CWA in light of her lack of specialized education, her inability to do research on a long-term basis, her laggardness in meeting deadlines, her open disdain for office hours and her lack of interest in the work she was called upon to do and might have been asked to assume if ever promoted.

The other side of the controversy was testimony to the effect that Marshall met her deadlines, performed her work well, desired advancement even if it meant leaving Washington for the field, ignored office hours no more than any others in the office, was not promoted while some male colleagues with less experience and no greater specialized education than she had passed her by in salary and responsibility, and a firm understanding and clear policy existing at CWA that women "professional" employees could not advance beyond a certain level of responsibility.

The Commission's findings do not resolve these sharply-contested issues in a manner which allows for meaningful review. For example, a finding was (Record at 108–09) that "[T]here existed throughout complainant's period of employment . . . an atmosphere of discrimination based on sex"; and, "At times the atmosphere of discrimination based on sex was more than an atmosphere: it consisted of

specific remarks excluding females and preferring males [on the part] [o]f one employee in particular . . . complainant's supervisor since 1970." Given the issues of fact presented by the evidence, we are entitled, in assessing whether the evidence supports the findings, to something more precise than the findings we have before us.

The inadequacy of the Commission's findings for our review carry over to the issue between the parties as to whether or not CWA engaged in retaliatory acts against Marshall after she filed her complaint before she terminated her employment. The Commission in its findings stated that "[t]he record supports the allegation [by Marshall]" and cites three actions on the part of CWA: (1) her job title was changed but her duties remained the same, (2) she was placed under the supervision of "a new employee who turned in written reports regarding her work," and (3) her office "alone" was reassigned "during an office reorganization." However, the record reflects that evidence was adduced at the hearing of a reason for each of these three "acts" by CWA.[1] We deem the Commission has failed to give "a concise statement of the conclusions upon each contested issue of fact" it had reached,[2] and the case must be remanded for further findings and conclusions.

 Petitioner's final contention is that the Commission was not empowered under the Regulation applicable to this proceeding to award money damages and counsel fees to complainant and to order CWA to undertake an affirmative action plan of employment. Petitioner argues (Brief at 20–21):

At the time the complaint was filed (June, 1972), the investigation conducted, conciliation attempted, and hearings held (September and October, 1973) there was no valid legislative or regulatory authority permitting the Commission to award money damages for back pay, pain and suffering, attorney fees or any other reason. The conduct with which the hearings were concerned terminated on September 5, 1973, two days before the initial hearing, when complainant's resignation from CWA's employ became effective. At that date there was no authority for any remedial action by the Commission other than to issue "its conclusions and recommendations for correction of the illegal practice".

Preliminarily, we note that D.C.Pol.Reg. Art. 47, § 9(b), proscribes discrimination in employment and provides that upon a finding of discrimination respondent is to be served with "conclusions and recommendations for correction of the illegal practice." Similar general language, without explicit reference to the award of money damages and counsel fees, was employed in

---

1. Thus, CWA presented testimony that there was a general reassignment of office space; that the "new employee" was a senior research economist who was asked by Marshall's supervisor to double-check his own unfavorable evaluation of the performance of her duties, and that her title was changed to reflect the increased responsibility she had been given. By citing this testimony we do not mean to suggest it should have been credited by the trier of fact; but only that such evidence created *issues* that the Commission *should have determined* before reaching the conclusions it stated so that the parties and this court in review can know the reasoning

employed by the Board. *See* D.C.Code 1973, § 1–1509(e).

2. Other basic issues of fact that should have been resolved are whether Marshall was denied a chance to take an assignment in the field or preferred for personal reasons to remain in headquarters; the nature of the duties of the field positions and whether Marshall was competent to perform them; whether Marshall's supervisor in evaluating her capability permitted a bias to influence that evaluation; and whether CWA in fact pursued a policy of excluding women from employment in the field.

D.C.Pol.Reg. Art. 45, § 9(b), proscribing discrimination in housing.[3] We concluded in *Mendota Apartments v. District of Columbia Commission on Human Rights,* D.C.App., 315 A.2d 832 (1974), that such general language was inadequate to authorize an award of money damages and counsel fees and an order to take certain affirmative action. It follows in our view from *Mendota* that Article 47 did *not* empower the Commission upon a finding of discrimination to award money damages and counsel fees and to order an affirmative action plan.

Respondent and intervenor respond that the City Council on November 16, 1973, *after* (a) the hearing on Marshall's complaint had ended, and (b) Marshall's employment with CWA had terminated, but *before* the Commission issued its final Order in 1975, supplanted the Articles referred to above by new Regulations. 20 D.C.Register 345, Reg. No. 73–22 § 1 (1973) expressly empowered the Commission in employment discrimination cases to award money damages and counsel fees. However, that Regulation, codified at 34 DCRR, § 33.4(a) (1973), provides in pertinent part that Article 47 of the District Police Regulations under which Marshall brought her complaint (as well as certain other Articles) "are hereby repealed [but] . . . *Any regulation superseded* by the provisions of this Title, *shall remain in full force and effect* for the purpose of any . . . administrative proceeding pending at the effective date of this Title . . . ." (emphasis added). Petitioner argues from this (Reply Brief at 2) "that cases pending on November 16, 1973 [*e. g.,* the instant case] continue to be controlled by Article 47 [*no* proviso therein for mon-ey damages, counsel fees and affirmative action plan], *not* by new Title 34 [where the Commission is authorized therein to make the kind of award it made in this case]."

Given the specific mandate by the Council that the particular Article of the Police Regulations extant when Marshall's complaint was filed "shall not be nullified" and "shall remain in full force and effect for the purpose of any . . . administrative proceeding pending," we see no alternative but to conclude that Article 47 of the Police Regulations in effect at the time of (a) the filing of the complaint and (b) the hearing of the evidence must govern the decision of the Commission. Our reading of the Council's Regulation as requiring *prospective* application is consistent with a further proviso in the Council's Regulation No. 73–22 calling for the development and then submission to the Council of "guidelines . . . with regard to compensatory damages and attorneys fees." 34 DCRR, § 33.4(a).[4] Accordingly, we conclude in the instant case that (1) the award of monetary damages and counsel fees and (2) the order to adopt an affirmative action plan were, under the circumstances here, beyond the authority of the Commission to order.

The case is remanded to the Commission with direction to make findings in accordance with the principles set forth in this opinion and to vacate its order insofar as it awards damages and counsel fees to Marshall and directs CWA to develop an affirmative action plan for employment of women.

*So ordered.*

---

3. The Commission upon a finding of housing discrimination may require the respondent "to cease and desist from such unlawful conduct and to take such affirmative action as will effectuate the purpose" of the Article.

4. Such guidelines were proposed, submitted for review by the Council and finally issued but a few days before the decision was rendered in the instant case. Thus, these guidelines and their impact on this case were not available for comment from the parties during this proceeding.