551 F.2d 1119
 ST. LOUIS SHIPBUILDING COMPANY and United States Fidelity
and Guaranty Company, Petitioners,
v.
DIRECTOR OF THE OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR, and Robert W.
Maybes, Respondents.
 No. 76-1530.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1977.
Decided March 29, 1977.
 
 Terry A. Bond, St. Louis, Mo., for petitioners.
 
 
 1
 Joshua T. Gillelan, II, U. S. Dept. of Labor, Washington, D. C., for respondents; William J. Kilberg, Sol. of Labor and Laurie M. Streeter, Associate Sol., Washington, D. C., on brief.
 
 
 2
 Before BRIGHT and HENLEY, Circuit Judges, and HARPER, Senior District Judge.*
 
 
 3
 HARPER, Senior District Judge.
 
 
 4
 The Benefits Review Board, affirming the decision of an administrative law judge, ordered St. Louis Shipbuilding Company and United States Fidelity and Guaranty Company (hereinafter collectively referred to as Petitioners) to pay Robert Maybes (hereinafter sometimes referred to as Claimant) permanent partial disability benefits under the Longshoremen's and Harbor Workers' Compensation Act, as in effect on July 13, 1972, 33 U.S.C. § 901 et seq. (1970). In this petition for review the Petitioners challenge the administrative determinations, denying that the Longshoremen's Act provided coverage for the injury which Claimant sustained.
 
 
 5
 Claimant was the sole witness to testify at the hearing conducted by the administrative law judge. His testimony may be briefly summarized as follows: In 1972, Maybes was employed by St. Louis Shipbuilding as a welder at their facilities on the Mississippi River in St. Louis, Missouri. His duties as a welder were performed both on land and on vessels floating in the Mississippi. On July 13, 1972, Maybes was repairing cracked welds on girders supporting the engine of a newly constructed tugboat. This tugboat, the launching of which was apparently imminent, was resting on "frames" located approximately fifty yards from the edge of the Mississippi and some ten yards from a "cradle" mechanism. The cradle, along with connected chains, was eventually to be utilized to lower the new tugboat into the river. It was while welding inside this tugboat that Maybes sustained the injury to his left eye which is the subject of this claim.
 
 
 6
 The administrative law judge hearing the claim held that the injury was compensable under the Longshoremen's Act and ordered Petitioners to pay permanent partial disability benefits to Claimant for fifty percent proportionate loss of the use of his left eye. The order further provided that Petitioners were to be given credit in the computation of these benefits for $4,550.00 previously paid to Claimant pursuant to a Missouri Workmen's Compensation award arising from the same incident and injury.
 
 
 7
 As in effect at the time of Claimant's injury, Longshoremen's Act Section 3(a), 33 U.S.C. § 903(a), provided in pertinent part:
 
 
 8
 Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) . . . .
 
 
 9
 The administrative law judge based his determination of jurisdiction under the Longshoremen's Act on the finding that the frames upon which the newly built tugboat rested were:
 
 
 10
 . . . necessarily a part of the cradle apparatus, i. e., that the assembled frames were an attendant structure, an appurtenance, or an extension of the cradle, a type of marine railway, and that Claimant was at work on a "drydock."
 
 
 11
 The finding that Claimant was injured on a dry dock thus placed his claim within the coverage of the Longshoremen's Act by virtue of 33 U.S.C. § 903(a). The Benefits Review Board affirmed the decision and order of the administrative law judge on the basis that the record considered as a whole presented substantial evidence in support of the finding that the frames upon which Claimant was working at the time of the injury constituted a dry dock within the meaning of 33 U.S.C. § 903(a).
 
 
 12
 The scope of review of an administrative law judge's findings is well defined. Such findings are to be accepted unless unsupported by substantial evidence on the record considered as a whole. Banks v. Chicago Grain Trimmers Assn., Inc., 390 U.S. 459, 467, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968); O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359, 362, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965). This standard on review remains applicable despite the substitution of administrative law judges for the deputy commissioners previously adjudicating claims under the Longshoremen's Act, and the substitution of the Benefits Review Board for the United States district courts to which initial review of compensation orders were formerly made. 33 U.S.C. § 921(b)(3). Further, such standard is also applicable to an appellate court's review of the findings of the Benefits Review Board. See Potenza v. United Terminals, Inc., 524 F.2d 1136, 1137 (2d Cir. 1975), for the statement:
 
 
 13
 On review by the Board, the findings of fact of the administrative law judge are "conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). Although the quoted statutory language appears to apply in terms only to review by the Board, the legislative history makes clear, as must logically be the case in any event, that the same standard was intended to apply to review in the courts of appeals. See H.R.Rep.No.92-1441, 1972 U.S.Code Cong. & Admin.News p. 4698, at 4709, 4718.
 
 
 14
 Accordingly, it is this Court's responsibility on review to determine whether there is substantial evidence in the record considered as a whole to support the finding that Claimant sustained his injury upon a dry dock.
 
 
 15
 Mr. Justice Douglas, in his concurring opinion to Avondale Marine Ways, Inc. v. Henderson, 346 U.S. 366, 367, 74 S.Ct. 100, 101, 98 L.Ed. 77 (1953) has noted:
 
 
 16
 . . . , there are three kinds of dry docks. (1) A floating dry dock, as its name makes clear, floats on the water, the vessel resting on the bottom of the dry dock after the water has been removed. (2) A graven dry dock is dug into the land. The vessel floats in but rests on land once the water has been pumped out. (3) Finally there is a marine railway, on which the vessel is drawn out of the water, instead of the water being drawn away from the vessel.
 
 
 17
 Claimant's description of the frames upon which he was working at the time of his injury discloses that the structure cannot be considered either a "floating" or a "graven" dry dock. It, therefore, appears that if the frames are to be found a dry dock they must be found to have formed a section of a marine railway. Certainly, there is ample support for the proposition that structures known as marine railways are within the coverage of the Longshoremen's Act by virtue of their status as dry docks. See Calbeck v. Travelers Insurance Co., 370 U.S. 114, 129, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962); Delome v. Union Barge Line Co., 444 F.2d 225, 231 (5th Cir.), cert. denied, 404 U.S. 995, 92 S.Ct. 534, 30 L.Ed.2d 547 (1971); Travelers Insurance Co. v. Shea, 382 F.2d 344, 347-348 (5th Cir. 1967), cert. denied, 389 U.S. 1050, 88 S.Ct. 780, 19 L.Ed.2d 842 (1968); Maryland Casualty Co. v. Lawson, 101 F.2d 732, 733 (5th Cir. 1933).
 
 
 18
 A marine railway is a permanently fixed system of tracks or rails which extends from a point on the shore well above the waterline to a point offshore well below the waterline. A cradle capable of carrying a vessel sits upon this railway and moves along the tracks by means of rollers or wheels. Chains or cables attached to this cradle enable it to carry a docked ship into or out of the water. O'Leary v. Puget Sound Bridge & Dry Dock Co., 349 F.2d 571, 573 (9th Cir. 1965). See also Maryland Casualty Co. v. Lawson, supra at 733; Union Shipbuilding Co. v. Boston Iron & Metal Co., 17 F.Supp. 318, 319 (D.Md.1936), aff'd 93 F.2d 781 (4th Cir. 1938); The Professor Morse, 23 F. 803, 804-805 (D.N.J.1885). A marine railway is to be distinguished from a building way which, though similar in appearance, was not at the time of Claimant's injury included within the coverage of the Longshoremen's Act. As clarified in American Mutual Liability Insurance Co. v. Neuman, 318 F.Supp. 398 (S.D.Ala.1969):
 
 
 19
 A dry dock function is different from that of a building way. The courts have interpreted that the functional purpose of a dry dock is to pull or raise a vessel from the water to examine or repair it. A building way is used solely for the construction and subsequent launching of a new vessel.
 
 
 20
 318 F.Supp. at 401.
 
 
 21
 The brevity of the record renders it impossible to determine whether the cradle apparatus here under consideration was designed and utilized as a marine railway or as a building way. However, the resolution of this petition does not require that a determination of the cradle's status be made. Assuming, arguendo, that the cradle mechanism was a marine railway, the record considered as a whole presents no substantial evidence to support the conclusion of the administrative law judge that the frames upon which the newly constructed tugboat rested at the time of the injury constituted "an attendant structure, an appurtenance, or an extension of the cradle." Accordingly, the decision of the Benefits Review Board in favor of the Claimant must be reversed.
 
 
 22
 In testifying at the administrative hearing that the frames upon which he was injured were separated from the cradle apparatus by a distance of ten yards, Claimant gave no indication that the two structures were physically connected in any manner. Rather, in describing the launching of the vessel, Claimant stated:
 
 
 23
 They put it on greasy skid logs which are 14, 18 inches in diameter and they set these on flat skid logs full of grease, and then they have what they call hydraulic jacks that they lower and let the boat rest on these logs. Then they took two hundred-ton cranes to it with cables hooked to it and they slid it across these logs onto the cradle. The cradle is then started up and it is lowered into the water.
 
 
 24
 This testimony obviates any conclusion that the frames were an extension of or appurtenant to the cradle and are, therefore, to be considered a part thereof for purposes of ascertaining the coverage provided by the Longshoremen's Act. The above described launching process instead establishes that the frames and cradle were physically and functionally distinct structures.
 
 
 25
 Claimant's explanation of the lowering of the vessel into the Mississippi reveals that there was no permanent track or rail system running from the frames to the cradle. The skid logs temporarily placed between the two structures were the means by which the tugboat was to be transported to the cradle. Those logs cannot be considered the permanently fixed track system characteristic of a marine railway and their presence does not permit the status of the cradle, whether it be marine railway or building way, to be attributed to the frames. The Court further notes that Claimant's testimony describes a dichotomized launching procedure. Having been constructed on the frames, the vessel is lowered from these frames by hydraulic jacks and is transported by cranes and skid logs some thirty feet to the cradle mechanism. Once readied upon the cradle, both vessel and cradle are then lowered into the river by huge chains. The fact that two independent and mechanically unrelated steps are utilized to effect the launching of the newly constructed vessel is additional indication that the two structures cannot be considered a unit.
 
 
 26
 In reversing the order of the Benefits Review Board the Court has not neglected to consider 33 U.S.C. § 920(a). That section provides in part:
 
 
 27
 § 920. Presumptions.
 
 
 28
 In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary
 
 
 29
 (a) That the claim comes within the provisions of this chapter.
 
 
 30
 However, where sufficient proof has been offered to rebut the presumption it falls out of the case. Travelers Insurance Co. v. Belair, 412 F.2d 297, 301 n. 6 (1st Cir. 1969); John W. McGrath Corp. v. Hughes, 264 F.2d 314, 317 (2d Cir.), cert. denied, 360 U.S. 931, 79 S.Ct. 1451, 3 L.Ed.2d 1545 (1959). The presumption serves only to control the result where there is a total lack of competent evidence. Del Vecchio v. Bowers, 296 U.S. 280, 286, 56 S.Ct. 190, 80 L.Ed. 229 (1935). The presumption is without effect where, as here, Claimant has provided competent evidence placing his claim outside of the recognized coverage of the Longshoremen's Act.
 
 
 31
 Reversed.
 
 
 
 *
 ROY W. HARPER, Senior District Judge, Eastern District of Missouri, sitting by designation