594 F.2d 404
 MARYLAND SHIPBUILDING AND DRYDOCK COMPANY, Employer and
Self-Insurer, Petitioner,
v.
Daniel L. JENKINS, Claimant, and Director, Office of
Workers' Compensation Programs, United States
Department of Labor, Intervenor.
 No. 77-2321.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 15, 1978.
Decided March 22, 1979.
 
 Benjamin R. Goertemiller, Towson, Md. (Pamela P. Wassmann, Semmes, Bowen & Semmes, Towson, Md., on brief), for petitioner.
 Franklin Freeman, Baltimore, Md., for respondents.
 
 
 1
 Before WINTER and PHILLIPS, Circuit Judges, and HOFFMAN,* Senior District Judge.
 
 WALTER E. HOFFMAN, Senior District Judge:
 
 2
 This is a petition under § 921(c) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901, Et seq. (the Act), for review of a final order of the Benefits Review Board affirming an administrative law judge's (ALJ) award of medical expenses to Daniel L. Jenkins, claimant-respondent, under § 907 of the Act. Maryland Shipbuilding and Drydock Company (employer), the petitioner herein, contends that Jenkins did not comply with § 907 of the Act and therefore is not entitled to the payment of medical expenses. Specifically, the employer contends that Jenkins incurred expenses for medical treatment from private physicians without first requesting the employer to provide medical care or to authorize such treatment, that Jenkins unreasonably refused to submit to a physical examination during this treatment, that there was no evidence that the private physicians were authorized by the Secretary of Labor to render treatment under the Act, and that the physicians failed to submit reports to the Secretary as required by the Act. We find that the Benefits Review Board and the ALJ completely disregarded the statutory requirements of § 907 of the Act and regulations promulgated thereto. Accordingly, we reverse that portion of the Board's order pertaining to the award of medical expenses.
 
 
 3
 On February 14, 1973, Jenkins, a welder at the Maryland Shipbuilding and Drydock Company, slipped on some ice on the bottom rung of a ladder on board the ORE NEPTUNE, bumping his knee on the ladder. Jenkins reported the injury and was taken to South Baltimore General Hospital, where he was x-rayed, treated, advised to put ice on the knee, and released with an elastic bandage on his knee. After receiving treatment at the hospital, Jenkins did not return to work, nor did he contact his employer to obtain authorization for further medical treatment. Instead Jenkins contacted his lawyer, who referred him to a Dr. Berman. Dr. Berman examined Jenkins on February 19, five days after the injury, and referred him to a physiotherapist, who first treated Jenkins on March 12. Jenkins received nineteen treatments from the physiotherapist between March 12 and April 23.
 
 
 4
 The employer established that it provided medical treatment for Jenkins on February 14, the day of the injury, at which time there was no reason to believe that further treatment would be necessary. On February 22, the employer wrote to counsel for Jenkins and requested that Jenkins report for a physical examination by Dr. Tan, a company doctor. Jenkins alleged that he had no confidence in Dr. Tan because of Dr. Tan's poor reputation among company personnel. Jenkins failed to keep the February 22 appointment. On March 2, the company again contacted Jenkin's lawyer, by letter, in order to arrange an examination for March 6. It was stated in the letter that if treatment was required, Jenkins would be furnished with the proper authorization. Jenkins did not report for the examination. On April 23, the company sent Jenkins a letter advising him that, if he did not report for work, his employment would be terminated due to his unexcused absences. Jenkins returned to work on April 25 and performed all the regular duties required of him. On April 26 Jenkins was examined by a company doctor, Dr. deGuzman, who reported that Jenkins' use of the knee was normal, and who opined that most of the extended physiotherapy was "entirely unnecessary."
 
 
 5
 Section 907 of the Act was amended in 1972 to allow employees greater freedom in choosing physicians to administer medical care. A procedure was formulated, however, to insure supervision by the Secretary of Labor. Section 907(b) gives the employee the right to choose an attending physician authorized by the Secretary of Labor to provide care under this chapter. The Secretary is required to actively supervise the medical care rendered injured employees by means of regular reports from the physician. Under § 907(d)[1] an employee is not entitled to recover any amount expended by him for medical services unless he shall have requested the employer to furnish such treatment or to authorize the provision of medical services. The physician must provide the Secretary with a report of the injury and treatment within ten days following the first treatment, although the Secretary may excuse the failure to furnish such report when necessary "in the interest of justice." If at any time the employee unreasonably refuses to submit to an examination by a physician selected by the employer, the Secretary may suspend the payment of further compensation during the period of such refusal. Section 920[2] of the Act creates a presumption in favor of an employee that his claim comes within the provisions of the Act and that sufficient notice of the claim was given.
 
 
 6
 The Benefits Review Board has interpreted § 907 in such a manner as to read all meaning out of the statute. The Board held that the § 907(d) requirement of prior request to the employer before seeking outside medical attention applies only when an employee is seeking reimbursement for medical expenses already paid by him. This interpretation borders on the ridiculous. Liability for medical services is incurred when the service is rendered, not when payment is tendered or when a workman's compensation award is made. Although the Act should be interpreted liberally, the plain terms of the statute may not be disregarded. Pillsbury v. United Engineering Co., 342 U.S. 197, 200, 72 S.Ct. 223, 96 L.Ed. 225 (1952). When Jenkins declined to request his employer to furnish additional medical services or to authorize such services, he failed to bring himself within the coverage of the Act. Nardella v. Campbell Machine Co., 525 F.2d 46, 50-51 (9th Cir. 1975). Jenkins' failure to comply with the Act is exacerbated by the fact that he obtained legal advice prior to seeking medical assistance, and therefore has no excuse for failing to obtain authorization from his employer.
 
 
 7
 Concerning Jenkins' failure to submit to an examination by a doctor selected by his employer, the Board quoted the pertinent part of § 907(d) and then held that, where the employer was paying no Compensation, the Act imposes no sanction. Again, the Board has misinterpreted the Act. Section 904(a) of the Act provides:Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this Act. . . .
 
 
 8
 Section 907 pertains entirely to medical services and supplies. Section 908 refers to compensation for disability benefits, and Section 909 refers to compensation for death. The term "compensation" must be read to apply to all benefits provided by these three sections. The suspension of compensation mentioned in § 907(d) logically refers to amounts expended for medical treatment or services as provided in that subsection. Jenkins' only excuse for his failure to submit to an examination was his lack of confidence in Dr. Tan. This might constitute a valid reason for refusing treatment from Dr. Tan, but does not relieve Jenkins of his duty to cooperate in arranging an examination by a doctor selected by his employer. Jenkins' failure to submit to an examination was arbitrary, and it was an abuse of discretion for the ALJ, acting on behalf of the Secretary, to excuse Jenkins' actions.
 
 
 9
 Finally, both § 907(d) and 20 C.F.R. § 702.422 require the attending physician to submit a report to the Secretary And to the employer within ten days following the first treatment. There is no evidence in the record that Jenkins complied with this procedure, nor would the record support a finding that it was in the interest of justice to excuse the failure to file this report. Again, the Board has upheld a total derogation of the Act. The Board would have it that the presumptions expressed in § 920 shift the burden to the employer of proving substantial evidence of non-compliance with the Act. A presumption does not have the force of evidence, and falls away once there is substantial evidence in opposition. Del Vecchio v. Bowers, 296 U.S. 280, 286, 56 S.Ct. 190, 80 L.Ed. 229 (1935); St. Louis Shipbuilding Co. v. Director of the Office of Workmen's Compensation Programs, 551 F.2d 1119, 1124 (8th Cir. 1977). It is ridiculous to require the employer to produce additional proof regarding a report which it alleges that it did not receive and which, if it exists, is clearly within the control of the Secretary. Section 920 does not relieve the claimant of his burden of proving the elements of his claim.
 
 
 10
 As we have shown, the Board granted recovery for medical treatment in disregard of the provisions of the Act in three respects and, as a consequence, its decision cannot stand. Reviewing courts are not obliged to stand aside and rubber-stamp the affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. National Labor Relations Board v. Brown, 380 U.S. 278, 291, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965).
 
 
 11
 The petition is granted and the award of payment for unauthorized medical treatment is reversed.
 
 
 12
 REVERSED.
 
 
 
 *
 Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 33 U.S.C. § 907(d) reads:
 An employee shall not be entitled to recover any amount expended by him for medical or other treatment or services unless he shall have requested the employer to furnish such treatment or services, or to authorize provision of medical or surgical services by the physician selected by the employee, and the employer shall have refused or neglected to do so, or unless the nature of the injury required such treatment and services and the employer or his superintendent or foreman having knowledge of such injury shall have neglected to provide or authorize the same; nor shall any claim for medical or surgical treatment be valid and enforceable, as against such employer, unless within ten days following the first treatment the physician giving such treatment furnish to the employer and the Secretary a report of such injury and treatment, on a form prescribed by the Secretary. The Secretary may, however, excuse the failure to furnish such report within ten days when he finds it to be in the interest of justice to do so, and he may, upon application by a party in interest, make an award for the reasonable value of such medical or surgical treatment so obtained by the employee. If at any time the employee unreasonably refuses to submit to medical or surgical treatment, or to an examination by a physician selected by the employer, the Secretary may, by order, suspend the payment of further compensation during such time as such refusal continues, and no compensation shall be paid at any time during the period of such suspension, unless the circumstances justified the refusal.
 
 
 [2]
 § 920. Presumptions
 In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary
 (a) That the claim comes within the provisions of this chapter.
 (b) That sufficient notice of such claim has been given.
 (c) That the injury was not occasioned solely by the intoxication of the injured employee.
 (d) That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself or another.