Gloria **PORTER**, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES**, Respondent.

**Washington Hospital Center, Intervenor.**

No. 85–1284.

District of Columbia Court of Appeals.

Argued Oct. 2, 1986.
Decided Dec. 17, 1986.

Robert G. Blackford, Gaithersburg, for petitioner.

Karen Dworkin, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time the Memorandum was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the Memorandum in Lieu of Brief, for respondent.

George E. Hart, Washington, D.C., for intervenor.

Before NEBEKER, MACK and ROGERS, Associate Judges.

PER CURIAM:

Petitioner Porter appeals from the District of Columbia Office of Workers' Compensation's denial of her claim for additional benefits. There are two issues presented by claimant on appeal: (1) whether the agency's decision was supported by substantial evidence; and (2) whether the procedures followed by the agency complied with the District of Columbia Administrative Procedures Act and the District of Columbia Workers' Compensation Act. Because we find substantial evidence in the record to support the agency's decision and also conclude that the agency's procedures complied with statutory requirements, we find petitioner's contentions without merit. We affirm.

### I. Substantial Evidence Exists to Support Agency's Decision

Under D.C. Code § 1–1509(e) (1981) an administrative agency must make findings of fact and conclusions of law which are based on "substantial evidence." Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hockaday v. D.C. Department of Employment Services*, 443 A.2d 8, 12 (D.C.1982) (citations omitted).

Petitioner was employed as a special diet cook at the Washington Hospital Center when, on October 9, 1983, she slipped and fell at work, hitting her head, neck, shoulder, back and hip. The employer paid compensation benefits for temporary total disability beginning October 10, 1983, but terminated claimant's benefits on May 12, 1984, on the ground that claimant unrea-

sonably refused to undergo an independent medical examination.[1]

Employer Washington Hospital Center contends petitioner failed to show up for three appointments scheduled for her with Dr. Jenkins, the physician who was to render an independent medical opinion. At the hearing petitioner stated that she did not know why she was being asked to see Dr. Jenkins, and did not go to see him because she was already seeing a third doctor, Dr. Toerge. The reasonableness or unreasonableness of claimant's inaction was not addressed at the hearing because the Department of Employment Services (DOES) hearing examiner found petitioner was no longer disabled in May, 1984.

█ The hearing examiner thus determined that the employer's termination of voluntary payment of compensation benefits on May 12, 1984 was justified. There was substantial evidence to support this determination. Specifically, the examiner relied on the report of petitioner's treating doctor, Dr. Cooney, dated April 18, 1984 stating there were no objective findings to which claimant's persistent complaints of pain and weakness in her right arm could be attributed. The doctor also noted there were inconsistent findings when testing for sensation and motor function, and that the results of a myelogram were normal. Dr.

Cooney further stated that he saw no reason why claimant should not be able to think about returning to work.

█ Petitioner argues that Dr. Cooney's latter statement cannot be interpreted as indicating that she was released to return to work. We agree that the statement, standing alone, is somewhat ambiguous. However, read in context, we cannot find the examiner's determination to be unreasonable.[2] This court's function in review is not to weigh the testimony and substitute itself for the trier-of-fact who received the conflicting evidence and determined the weight to be accorded such evidence. *Communication Workers v. District of Columbia Commission on Human Rights,* 367 A.2d 149, 152 (D.C.1976). The examiner had the claimant and the medical reports before her. She found Dr. Cooney's opinion to be consistent with a later report of Dr. Jenkins' (November 1, 1984) which concluded that there was no organic basis for petitioner's complaints and that claimant could return to work without restrictions.[3] Based on all the evidence in the record, the examiner determined that Dr. Cooney's statement should be understood to indicate claimant was at that time able to return to work.[4] The Director of DOES found the examiner's determination to be reasonable and so do we.

1. D.C.Code § 36–320(f) (1981) provides:
   An injured employee claiming or entitled to compensation shall submit to such physical examination by a medical officer of the District of Columbia or by a duly qualified physician or panel of physicians designated or approved by the Mayor as the Mayor may require. The place or places shall be reasonably convenient for the employee. Proceedings shall be suspended and no compensation be payable to any period during which the employee may refuse to submit to examination.

2. Specifically, in his Supplementary Neurosurgical Report dated April 18, 1984 Dr. Cooney stated: "There are no real objective findings to attribute the patient's persistent symptoms. Please note the previously normal myelogram and the inconsistent findings on today's examination. I have advised her to increase her activ-

ities, possibly continue physical therapy, but I see no reason why she should not be able to begin thinking about returning to work." (R. 115).

3. The reports of a third physician, Dr. Toerge, were not credited by the hearing examiner because results of the petitioner's myelogram, thermogram, nerve conduction study and EMG contradicted his diagnosis of radiculopathy or nerve root injury.

4. Petitioner particularly objects to the hearing examiner's reliance on Dr. Cooney's statement regarding "objective tests" because such test results were not in evidence as part of the report. But there was no need for the objective tests to actually be in evidence. The examiner could rely on the treating doctor's statement with regard to the test results.

II. *Department of Employment Services Procedures Complied With Statutory Requirements*

■ Petitioner makes a number of arguments alleging procedural defects in the agency's handling of the case. The argument that the Director of DOES had no right to issue the final compensation order because he was not present at the hearing is frivolous. *See Dell v. Department of Employment Services*, 499 A.2d 102 (D.C. 1985). The Director was in fact obligated to review the record here and to affirm the hearing examiner's decision if supported by substantial evidence.[5]

■ Petitioner further claims that, in taking Dr. Jenkins' report into consideration, the hearing examiner improperly considered evidence extrinsic to the record. Under D.C.Code § 36–320(c) (1981), "no additional information may be submitted by the claimant or other interested parties after the date of hearing, except under unusual circumstances as determined by the Mayor." In the instant case, the record was explicitly left open for the results of the independent medical examination. The hearing examiner set the due date for the medical report as November 1, twenty days from the hearing date, stating "the record will close on that day." Because claimant requested that the record remain open for submission of an affidavit containing objections to certain statements in the doctor's report, the record was not officially closed until December 31, 1984. The consideration of the medical report by the hearing

examiner as part of the total record was proper.[6]

■ Petitioner also notes the hearing examiner failed to comment on petitioner's credibility. Petitioner concludes that the examiner must have credited petitioner's testimony, and argues that this negates the existence of substantial evidence. But the hearing examiner's failure to make a special finding concerning petitioner's credibility does not constitute error. *See Bankers Local Union No. 118 v. District of Columbia Board of Zoning Adjustment*, 437 A.2d 176, 178–79 (D.C.1981). Moreover, in crediting Dr. Cooney's report, the hearing examiner implicitly rejected petitioner's testimony.

Because we find petitioner's contentions of insubstantial evidence and procedural defects in the agency proceedings unpersuasive, we

*Affirm.*

ROGERS, Associate Judge, dissenting:

The majority correctly states that in determining whether there is substantial evidence to support the agency's denial of benefits, "this court's function in review is not to weigh the testimony and substitute itself for the trier of fact who receives conflicting evidence and determines the weight to be accorded to such evidence." *Supra* at 1022. *McLean v. Department of Employment Services*, 506 A.2d 1135, 1136–37 (D.C.1986). But neither can the court ignore a record which contains no evidence explaining the meaning of Dr. Cooney's ambiguous statement on April 18,

5. Petitioner also contends the Director denied claims that were not ruled upon by the hearing examiner (namely, for medical expenses and interest). But the hearing examiner found that petitioner was no longer temporarily totally disabled as of May 12, 1984. The Director properly interpreted the examiner's proposed order as also denying claimant's request for interest on unpaid compensation and medical expenses incurred after that date.

6. Petitioner claims that the hearing examiner erred by not ruling on petitioner's objection to the introduction of Dr. Jenkins' report and admitting it into evidence despite the fact it was

untimely (the report was due November 1, 1985 and not received until November 2, 1985). But it is apparent that by receiving into evidence Dr. Jenkins' report, as well as petitioner's affidavit taking exception to portions of the report, the hearing examiner overruled petitioner's objection as to the untimeliness of that report. It was within the hearing examiner's discretion to admit this evidence as timely. Given that petitioner cannot allege any prejudice from the one day delay in submission of the report, it is clear that the hearing examiner did not abuse her discretion in admitting it into evidence.

1984, or the relevance of Dr. Jenkins' report of October 24, 1984, to the preceding six month period, and which otherwise contains uncontradicted evidence of disability until October 24, 1984. Substantial evidence requires reliable, relevant evidence "as a reasonable mind might accept as adequate to support a conclusion." *Nova University v. Educational Institution Licensure Commission*, 483 A.2d 1172, 1190 (D.C.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985), quoting from *Vestry of Grace Parish v. District of Columbia Alcoholic Beverage Control Board*, 366 A.2d 1110 (D.C.1976), and cited in *McLean v. Department of Employment Services, supra*, 506 A.2d at 1137. Accordingly, I would reverse and remand, and respectfully dissent.

The District of Columbia Worker's Compensation Act (D.C.Code §§ 36–301 *et seq.*) (1981) (the D.C. Act) is based on the federal Longshore and Harbor Workers' Compensation Act, and cases interpreting the federal statute provide persuasive authority in interpreting the D.C. Act. *Dunston v. Department of Employment Services*, 509 A.2d 109, 111 n. 2 (D.C.1986); *Hughes v. Department of Employment Services*, 498 A.2d 567, 571 n. 8 (D.C.1985). The D.C. Act, consistent with the general rule for worker's compensation statutes, is to be construed liberally. *Grayson v. Department of Employment Services*, 516 A.2d 909, 911 (D.C.1986); *Wheatley v. Adler*, 132 U.S.App.D.C. 177, 183–84, 407 F.2d 307, 313–14 (1968); *Baltimore & Philadelphia Steamboat Co. v. Norton*, 284 U.S. 408, 414, 52 S.Ct. 187, 189, 76 L.Ed. 366 (1932). Thus, in worker's compensation cases, "inferences [are] made and doubtful questions of fact [are] resolved in favor of the employees seeking benefits under the Act." *Geddes v. Benefits Review Board*, 236 U.S.App.D.C. 381, 385, 735 F.2d 1412, 1416 (1984) (construing a retaliatory discrimination claim filed under the federal Longshore and Harbor Workers' Compensation Act, and noting that such a claimant, like a disability claimant, is not required to prove his or her case by a preponderance of the evidence because, consistent with the Act's purposes, a lesser standard suffices) (citations omitted). *See also Wheatley, supra*, 132 U.S.App.D.C. at 183–184, 407 F.2d at 314; *Swinton v. Kelly*, 180 U.S.App.D.C. 216, 225, 554 F.2d 1075, 1084, *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976) (same); D.C. Code § 36–321 (1981). Although *Geddes* is not binding on us, *M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971), and there are differences between the federal and D.C. Act, *Hughes v. Department of Employment Services, supra*, 498 A.2d at 569–70, the opinion is persuasive and consistent with our opinions that the D.C. Act is to be liberally construed. *Cf. Green v. Department of Employment Services*, 499 A.2d 870, 877 (D.C.1985) (fair preponderance required to overcome presumption employee involuntarily quit).

In holding that the hearing examiner's finding that Ms. Porter was able to return to work as of April 18, 1984 and was therefore not entitled to disability benefits after her employer stopped paying them on May 12, 1984 was supported by substantial evidence, *McLean v. Department of Employment Services, supra*, 506 A.2d at 1136; D.C.Code § 1–1509(e) (1981), the majority opinion relies on Dr. Cooney's April 18, 1984 report and the fact that it was consistent with Dr. Jenkins' October 24, 1984 report. However, Dr. Jenkins did not examine Ms. Porter until five months after her temporary disability benefits had been terminated, on May 12, 1984, and hence, in the absence of evidence to the contrary, his findings about her physical condition were relevant only as of that date. While Dr. Cooney's April 18 report stated that Ms. Porter should "be able to begin thinking about returning to her work," it did not say that she was able to return to work either as of that day, or at any particular time between April 18 and the date when Dr. Jenkins examined her. The only evidence before the hearing examiner which directly addressed Ms. Porter's condition during the six months between Dr. Cooney's and Dr.

Jenkins' reports were two reports of Ms. Porter's treating physician, Dr. Toerge. Dr. Toerge's reports of June 25 and October 2, 1984, recommended that she not return to work in order to avoid aggravating her injury.[1]

Thus, the only evidence regarding Ms. Porter's ability immediately to return to work was Dr. Jenkins' report of October 24, 1984. That report did not state whether Ms. Porter was able to return to work prior to October 24. Dr. Toerge's reports stated that Ms. Porter was not. The only evidence that Ms. Porter may no longer have been disabled between April 18 and October 24 was the ambiguous statement in Dr. Cooney's April 18 report that he saw "no reason why she should not be able to begin thinking about returning to her work." If any inference in support of Ms. Porter's claim can be drawn from Dr. Cooney's report, it must be drawn.

The hearing examiner, in order to reach the result she did, must have inferred that the statement in Dr. Cooney's April 18 report meant Ms. Porter was able to return to work immediately. Dr. Cooney's report does not say this, and no evidence was offered to interpret his medical report.[2] It is entirely possible that Dr. Cooney would have testified that in his opinion, contrary to Dr. Toerge's opinion, Ms. Porter could return to work immediately. On the other hand, he might have testified that although he thought Ms. Porter should begin thinking about returning to work as of April 18, she should not actually resume her duties until a later time. Ms. Porter testified that in working as a special diet cook she was required to lift heavy pots of soup, and that heavy lifting still aggravated the pain which extended from her neck all the way down her right arm to her hand.

Neither the ambiguity of Dr. Cooney's statement nor the basis for interpreting medical test results on which the three doctors based their reports could be resolved by evidence before the hearing examiner.[3] Since factual doubts are to be resolved and inferences are to be drawn in favor of the claimant, the hearing examiner properly could infer only that Dr. Cooney was of the opinion Ms. Porter was not able to return to work until some time after April 18, 1984. Accordingly, the hearing examiner's finding that Ms. Porter was no longer disabled as of April 18 is not based on substantial evidence of record, and the ruling that therefore she was not entitled to disability benefits after May 12, 1984 must be reversed.

This does not end the matter, however. Ms. Porter testified that she had failed to keep several appointments made by her employer for her to be examined by Dr.

1. In his June 25 report, Dr. Toerge stated that based on a physical examination of Ms. Porter he diagnosed her as having "C–7 radiculopathy on the right, with somatic dysfunction of the cervicodorsal junction and left low back pain with mild radiculitis in the left lower extremity." In his October 2 report, Dr. Toerge stated after a physical examination he found "persistent C–7 radiculopathy ... [and] dysfunction of the cervical spine in relationship to the thoracic spine...."

2. The hearing examiner was not limited to the evidence presented by the parties. D.C.Code § 36–320(g) (1981).

3. Dr. Jenkins' report states that on May 30, 1984, Dr. Cooney told Ms. Porter "In view of the fact that she has had a normal myelogram and that there is absolutely no objective finding, I have nothing further to offer the patient." In addition to being ambiguous as to when Ms. Porter could actually return to work, this statement constitutes inadmissible hearsay because it is not contained in any of Dr. Cooney's reports which were in the record before the agency. As a general rule, "a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing." *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971); *see also Dowd v. D.C. Pol. & Firefighters' Retirement*, 485 A.2d 212, 215 (D.C.1984); *District of Columbia v. Jones*, 442 A.2d 512, 523 n. 19 (D.C.1982). This rule does not allow for the double hearsay at issue here. Dr. Jenkins' statement of what Dr. Cooney told Ms. Porter does not constitute a medical finding based on his own examination of the claimant, and so lacks the indicia of reliability that such a medical finding would have.

Jenkins. Therefore, in view of the statutory requirement that claimants cooperate in such independent examinations, D.C. Code § 36–320(f) (1981), upon remand the hearing examiner would have to determine whether Ms. Porter's explanations would excuse her failure to keep the appointments. *See Maryland Shipbuilding and Drydock Co. v. Jenkins,* 594 F.2d 404, 405 (4th Cir.1979) (where employee's only excuse for his failure to submit to examination by employer's doctor was lack of confidence in that doctor, his failure to submit to the examination was arbitrary, and the administrative law judge abused his discretion by excusing employee's actions). If the hearing examiner found Ms. Porter's explanations to be unreasonable, *id.* at 406, then her eligibility for disability benefits would have to be reduced to the period preceding the first scheduled examination which Ms. Porter failed to keep and for which failure she is found to have offered no reasonable explanation. § 36–320(f).[4]

---

**4.** I do not reach the issues relating to medical bills and attorney's fees.