**Francis V. GEDDES, Jr., Petitioner,**

v.

**BENEFITS REVIEW BOARD UNITED STATES DEPARTMENT OF LABOR, Respondent,**

**Washington Metropolitan Area Transit Authority, Intervenor.**

No. 83–1452.

United States Court of Appeals, District of Columbia Circuit.

Argued 10 Nov. 1983.

Decided 22 May 1984.

Bernard J. DiMuro, Alexandria, Va., with whom John D. Grad, Alexandria, Va., was on the brief for petitioner. Janis L. McDonald, Alexandria, Va., also entered an appearance for petitioner.

John F. Ward, Gaithersburg, Md., for intervenor, Washington Metropolitan Area Transit Authority.

Before WILKEY and WALD, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge WILKEY.

Dissenting opinion filed by Senior Circuit Judge MacKINNON.

WILKEY, Circuit Judge:

Petitioner Francis V. Geddes seeks review of a determination of the Benefits Review Board, U.S. Department of Labor, which denied his claim for back pay and benefits under section 49 of the Longshoremen's and Harbor Workers' Compensation Act (the "Act").[1] That section prohibits an employer from discriminating against an employee because the employee has claimed compensation under the Act. The Benefits Review Board (the "Board") denied Geddes' section 49 claim on the ground that petitioner did not prove that his filing of a claim for compensation motivated the employer's allegedly discriminatory action.[2] We find that the Benefits Review Board failed to apply the correct standard of proof and improperly allocated the burden of proof between Geddes and his employer. We, therefore, vacate the order on review and remand the case to the Board.

## I. BACKGROUND

Petitioner Geddes was employed as a bus driver by the Washington Metropolitan Area Transit Authority ("WMATA") for seven years prior to his injury. In March of 1975, a public hearing was held concerning proposed rate increases for WMATA buses. Geddes testified in opposition to the proposed rate increases as a private citizen at the public hearing, noting instances of wasteful mismanagement at WMATA. Within two days of Geddes' appearance at the hearing, WMATA fired him from his job. After much publicity and press coverage of the firing, Geddes was reinstated the following week.[3]

Once reinstated, however, Geddes was subjected to intense harassment by WMATA officials. He was put under unusually strict surveillance on the job; he received citations for fabricated violations; and his supervisors spread lies about him.[4] The repeated harassment by supervisors had an upsetting effect on Geddes, who became physically ill on 11 April 1978 when he was told to report after work to answer for yet another violation. Geddes was unable to complete his scheduled bus run and was placed on sick leave. He came under the care of a psychiatrist. On 8 May 1978 Geddes filed a claim for compensation for total temporary disability under the Longshoremen's and Harbor Workers' Compensation Act.[5] After recovering from his illness, in October 1978 Geddes began making inquiries about returning to work. WMATA, however, put Geddes on "inactive status" and failed to respond to his inquiries. Geddes has not worked at WMATA since the day he became ill.[6]

Geddes' claims under the Act sought both compensation for total temporary disability as well as back pay due to WMATA's allegedly unlawful refusal to permit him to return to work. A hearing on both claims was held before an Administrative Law Judge in April 1979. In his subsequent decision and order, the ALJ determined that WMATA supervisors' harassment of Geddes during the course of his employment caused Geddes' psychological/physical illness. The ALJ held that Geddes was entitled to compensation for temporary total disability from 11 April 1978 until 11 August 1978. In addition, the ALJ found that WMATA unlawfully discriminated against Geddes by refusing to allow him to return to work after his recovery. This, the ALJ held, violated section 49 of the Act, which prohibits an employer from discriminating in any manner against an employee because the employee has

1. 33 U.S.C. §§ 901–50 (1976); *id.* § 948a.

2. Decision and Order, No. 81–277, 28 February 1983, Joint Appendix ("J.A.") at 17.

3. *See* Decision and Order of the Administrative Law Judge, 28 November 1979, J.A. at 3–4.

4. *Id.* at 5–6.

5. 33 U.S.C. §§ 901–50 (1976) is extended to employers in the District of Columbia by D.C.CODE ANN. § 36–501 (1968).

6. J.A. at 5, 12–13 & n. 1. Petitioner now seeks back pay for the period from October 1978 to 27 June 1980, the date on which WMATA stated that Geddes could return to work.

claimed compensation under the Act. Accordingly, the ALJ ordered WMATA to reimburse Geddes for lost wages for the period during which Geddes had recovered but had not been reinstated.[7]

WMATA petitioned the ALJ for reconsideration of the section 49 discrimination issue only; it did not challenge the ALJ's finding that the supervisors' harassment of Geddes at work made him ill. The petition for reconsideration was granted and a supplemental hearing was held. In his decision upon reconsideration, the ALJ found that WMATA became aware of Geddes' interest in returning to work in October 1978. He further found that WMATA treated Geddes as an "outcast," hoping to prevent him from returning to work.[8] He explicitly found that WMATA had animus toward Geddes and did not want Geddes back on the job. The ALJ, however, reversed his previous position on causation in regard to the discrimination claim and held that Geddes had failed to prove that his filing of a claim for compensation under the Act contributed to the animus and hostility WMATA directed at him. The ALJ, therefore, denied Geddes' claim for back pay under section 49.[9]

Geddes appealed that finding to the Benefits Review Board of the Department of Labor. The sole issue on appeal was whether the ALJ properly denied Geddes' discrimination claim under section 49. The Board affirmed the ALJ's decision and this petition for review ensued.

## II. ANALYSIS

██ review of the decision of the Benefits Review Board is limited to a review for errors of law and for findings of fact not supported by substantial evidence in the record considered as a whole.[10] We find

that the Board erred by failing to apply the proper standard of proof and by improperly allocating the evidentiary burden between Geddes and WMATA.

### A. *Elements of a Discrimination Claim Under Section 49*

██ Geddes seeks back pay on the ground that WMATA discriminated against him in violation of section 49 of the Act. That section provides:

It shall be unlawful for an employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer....[11]

The elements of a meritorious complaint under section 49 are twofold. First, the employer must commit a discriminatory act. Second, the discriminatory act must be motivated by animus against the employee because of the employee's pursuit of his rights under the Act.[12] This second requirement of a section 49 claim is satisfied even if the employer's action is only *partially* motivated by an employee's exercise of his rights under the Act; an employer who discriminates against an employee both because the employee filed a compensation claim and because of other, independent reasons nonetheless violates section 49.[13]

Turning to the first element of the section 49 offense claimed here, the ALJ heard testimony about WMATA's discriminatory treatment of Geddes, which was alleged to be WMATA's refusal to allow Geddes to return to work from the time of his recovery until June 1980. Geddes testified that he made numerous attempts to return to work beginning in the fall of 1978 and that

---

7. J.A. at 3–9.

8. Decision and Order upon Reconsideration, 2 December 1980, J.A. at 12, 15.

9. *Id.* at 15.

10. *See Voris v. Eikel,* 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5 (1953); *Director, Office of Workers'*

*Compensation Programs v. Robertson,* 625 F.2d 873 (9th Cir.1980).

11. 33 U.S.C. § 948a (1976).

12. *See Gondolfi v. Mid-Gulf Stevedores,* 11 BRBS 295 (1979).

13. *See id.*

WMATA ignored and frustrated his efforts to be reinstated. The ALJ found that, at minimum, WMATA was aware of Geddes' inquiries about returning to work and attempted to dissuade him from doing so. The ALJ apparently found it unnecessary, however, to make an explicit determination of whether the actions of WMATA were discriminatory because of his finding with respect to the second element of a section 49 claim—WMATA's motivation for its actions.

In addressing the issue of WMATA's motivation for its actions, the ALJ found that WMATA had animus against Geddes, which finding is supported by substantial evidence in the record considered as a whole. There was testimony that WMATA supervisors passed Geddes' claim form around the office while laughing at his claim and ridiculing his illness.[14] There was also testimony that a member of WMATA's claims office said that Geddes would be prevented from returning to work until the dispute over his claim for compensation had been fully resolved.[15]

The ALJ not only concluded that WMATA believed that Geddes was not a "team player" and that it had animus against him but he also concluded that this animus prompted WMATA's unwillingness to allow Geddes to resume his job. According to the ALJ, WMATA treated Geddes as an "outcast," intending to induce him never to return to work.[16] This treatment was caused by WMATA's animus against Geddes.

Although Geddes successfully proved that WMATA's animus motivated its attempts to prevent Geddes from returning to work, the ALJ denied petitioner's claim under section 49 because Geddes failed to prove that the animus against him was at least partially motivated by his filing of a claim for compensation. The ALJ noted that WMATA's harassment of Geddes began when Geddes testified at the public hearing in 1975. He concluded that "general animus" continued to motivate WMATA's actions even after Geddes filed his claim for compenation under the Act. The ALJ denied Geddes' claim, therefore, because Geddes failed to prove that his filing of a compensation claim was a separate, contributing factor in WMATA's refusal to let him return to work, when this refusal was viewed in the context of WMATA's repeated harassment of and discrimination against Geddes over the course of three years.[17]

## B. *Allocating the Burden of Proof*

 In finding that WMATA's motivation for its actions against Geddes was unrelated to Geddes' exercise of his rights under the Act, the ALJ placed too heavy a burden on Geddes to prove that the filing of his compensation claim contributed to the animus against him. Claimants seeking relief under the Act have long enjoyed the benefit of a light standard of proof in making their claims. The settled law articulated by the Supreme Court is that although a claimant seeking relief bears the burden of persuasion, the Act must be liberally construed in light of its beneficient and humanitarian purposes.[18] Accordingly, claimants who seek compensation under the Act do not bear as heavy a standard of proof as the one borne by plaintiffs in civil actions. A claimant is not required to prove his case by a preponderance of the evidence; instead, a lesser standard suffices. This lesser standard of proof requires that inferences be made and doubtful questions of fact be resolved in favor of the employee seeking benefits under the Act.[19]

---

14. J.A. at 208.

15. J.A. at 9.

16. J.A. at 15.

17. *Id.*

18. *See Voris v. Eikel,* 346 U.S. 328, 333, 74 S.Ct. 88, 91, 98 L.Ed. 5 (1953); *Alley v. Julius Garfinkle & Co.,* 1 BRBS 66 (1974).

19. *See Strachan Shipping Co. v. Shea,* 406 F.2d 521 (5th Cir.), *cert. denied,* 395 U.S. 921, 89 S.Ct. 1773, 23 L.Ed.2d 238 (1969); *Gondolfi v. Mid-Gulf Stevedores,* 7 BRBS 1001, 1004 (1978).

■ This liberal standard of proof applies to claims alleging unlawful discrimination under section 49 of the Act. In *Director, Office of Workers' Compensation Programs v. Robertson,* the Ninth Circuit reiterated the settled rule that *all* provisions of the Act must be liberally construed in light of the humanitarian purposes of the Act.[20] And in *Gondolfi v. Mid-Gulf Stevedores, Inc.,* the Benefits Review Board held that it was error to conclude that a claimant alleging discrimination under section 49 was required to prove his claim by a preponderance of the evidence.[21] Instead, a claimant under section 49 bears the same light burden of proof that an injured claimant bears when he seeks compensation under the Act.

■ This light standard of proof should be applied to Geddes' claim that WMATA violated section 49 by preventing him from returning to work during the period of October 1978 to June 1980. The petitioner need not prove by a preponderance of the evidence that the employer's animus was due to the filing of a claim. Instead, doubtful questions of fact must be resolved and inferences must be made in favor of the petitioner. On remand, the Benefits Review Board should apply this light standard of proof to its evaluation of the evidence.

■ In addition, the Benefits Review Board improperly allocated the burden of proof in this case. The ALJ not only required Geddes to prove that WMATA committed a discriminatory act motivated by animus, but he required Geddes to separate WMATA's long-standing animus due to Geddes' testimony at a public hearing in 1975 from animus based on Geddes' attempts to receive compensation for his work-related illness. The proper rule, however, is that once Geddes proves that WMATA committed a discriminatory act

caused by animus, the evidentiary burden of proof should shift to WMATA to prove that its animus was not even partially motivated by Geddes' exercise of his rights under the Act.

Such an allocation of the burden of proof is essential in order to effectuate the beneficent purposes of the Act. Putting the responsibility on the petitioner to separate WMATA's motivation for harassment before the petitioner filed his compensation claim from the reasons for harassment after the filing of the claim places a herculean burden on a claimant seeking relief under section 49. The mandate that the Act be liberally interpreted in order to avoid harsh results counsels a shifting of the evidentiary burden of proof under the facts of this case. We note that courts have properly shifted the burden of proof in other contexts under the Act in order to effectuate its humanitarian purposes. For example, in *New Orleans (Gulfwide) Stevedores v. Turner,*[22] the Court of Appeals for the Fifth Circuit required the employer to bear the burden of proving the availability of jobs for which the injured claimant was qualified, instead of requiring the claimant to prove, as part of his case in chief, that he was incapable of obtaining light work. The court held that such an allocation of the burden of proof was required by the settled rule that the Act must be liberally construed in favor of claimants.[23]

Furthermore, shifting the evidentiary burden of proof in the instant case is consistent with the principles underlying evidentiary shifts in other areas of law. Under the doctrine of *res ipsa loquitur* in tort law, for example, a rebuttable inference or presumption of negligence arises when the plaintiff proves facts from which it would be reasonable to conclude that the defendants were at fault, and when an explanation of the event is more accessible to the

---

20. 625 F.2d 873, 878 & n. 9 (9th Cir.1980); *see also Reed v. S.S. Yaka,* 373 U.S. 410, 415, 83 S.Ct. 1349, 1353, 10 L.Ed.2d 448 (1963).

21. 7 BRBS 1001, 1004 (1978).

22. 661 F.2d 1031 (5th Cir.1981).

23. *Id.*

defendants than to the plaintiff.[24] Likewise, in the field of employment discrimination, the burden of proof shifts from the plaintiff to the defendant once the plaintiff has made a prima facie case.[25] In both of these areas of law, the evidentiary burden of proof properly switches from the plaintiff to the defendant for two reasons. First, it is reasonable to presume that the acts complained of, if not otherwise explained, are likely to have been caused by improper conduct on the part of the defendant. Second, the defendant typically has greater access to the evidence on the particular issue than does the plaintiff.[26]

Both of those reasons for shifting the evidentiary burden of proof are present in the instant case. When, as in this case, an employee who sought compensation under the Act introduces sufficient evidence to prove that his employer subsequently both committed a discriminatory act and was motivated to do so by animus, it is reasonable to presume that, unless otherwise explained, the employer's act was at least partially motivated by the employee's claim for compensation. This presumption is particularly appropriate when, as here, the employer's animus against its employee was the cause of the employee's original illness and his claim for compensation. Under such circumstances, it is likely that the employee's filing of a compensation claim will contribute to the employer's animus against the employee. In addition, in cases such as the instant one it is likely that the employer will have greater access than the employee will have to evidence that can prove the motivation for its actions. Thus when a claimant under section 49 proves that the employer committed a discriminatory act motivated by animus, and particularly when, as here, the employer's hostility towards the employee was the cause of the original injury and compensation claim, it should be presumed that the filing of the

compensation claim contributed to the employer's motivation for the discriminatory act. This presumption is, of course, rebuttable.

### III. Conclusion

We vacate the decision on review and remand the case to the Benefits Review Board for consideration of the evidence in light of the proper standard and burden of proof. The liberal standard of proof available to claimants under the Act should be applied to this petitioner's claim for back pay and benefits under section 49 of the Act. Furthermore, if petitioner satisfies this evidentiary burden by proving a discriminatory act caused by animus, a rebuttable presumption will arise that the animus was motivated at least in part by the petitioner's filing of his claim for compensation. The burden of proof then shifts to WMATA to prove that its animus was not motivated, even in part, by Geddes' exercising of his rights under the Act.

Accordingly, the order on review is vacated and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

MacKINNON, Senior Circuit Judge (dissenting):

At contest in this case is whether the employer, WMATA, may be held liable under Section 49 of the Act, for having discriminated against the claimant in his efforts to return to work between October, 1978, and June 27, 1980. The crucial issue is the *motivation* for WMATA's actions. The majority remands the case to reconsider whether the employer's discrimination against Geddes was *partly* motivated by his having filed a claim for disability compensation. The majority opinion indicates that the Benefits Review Board somehow erred in two respects: first, by imposing on

---

**24.** *See* W. Prosser, Handbook of the Law of Torts 211–26 (4th ed. 1971).

**25.** *See, e.g., Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

**26.** *See generally* J. Wigmore, Evidence §§ 2485–2489 (J. Chadbourn ed., 1981).

the claimant an overly strict burden of proof; and, second, by failing to shift the burden onto the employer once the claimant had made a particular showing.

From the record, it does not appear to me that the first error to which the majority opinion refers ever occurred in the administrative proceedings. On the second point, I would hold that the burden of proof was properly allocated and applied. The administrative law judge (ALJ) properly stated the law, correctly evaluated the evidence, and concluded unambiguously from the evidence that there was "no [creditable] evidence" that the employer's discrimination against Geddes had been "motivated by animus against him because he filed a compensation claim." *See infra.* The Board reached the same conclusion and affirmed. Accordingly, I believe that a remand of this case is unwarranted and futile, and I must respectfully dissent.

### 1. *The Light Burden of Proof on the Claimant*

Particularly in view of the majority opinion, close attention to the ALJ's opinion is necessary. The Board's affirmance of the ALJ adopted his legal analysis, his standard for evaluating the evidence, and his factual findings. The ALJ set forth the legal framework for his decision as follows:

> [A]nimus against the employee for filing a compensation claim ... may be inferred from the circumstances of the case. *Dill v. Sun Shipbuilding and Dry Dock Company*, BRB No. 76–504, 6 BRBS 738 (November 21, 1977). The Claimant has the burden of proof under this section. *Martin v. General Dynamics Corporation*, BRB No. 78–191, 9 BRBS 836 (June 15, 1978). But, unlike a civil case, a Claimant bringing a case under Section 49 does not have to prove his discrimination claim by a preponderance of the evidence. *Gondolfi v. Mid-Gulf Stevedores*, BRB No. 77–331, 7 BRBS 1001 (February 28, 1978). The evidence presented is to be evaluated in terms of the "beneficient [sic] or humanitarian" purposes of the Act and in accord

with the rule that any doubtful question of fact must be resolved in favor of the injured employee. *Alley v. J. Garfinckel and Company*, 1 BRBS 6, BRB No. 74–111 (August 6, 1974).

*Geddes v. Washington Metropolitan Area Transit Authority*, No. 79–DCWC–136, slip op. at 2 (Dec. 2, 1980) (decision and order upon reconsideration) (hereinafter "ALJ Decision") (JA 12, 13). Contrary to the majority's discussion of the proper burden of proof, Majority Opinion at 1416–1417, the ALJ's legal analysis here was entirely sound. Both as to the slight burden on the claimant and as to the required construction of doubtful evidence in favor of the claimant, the ALJ indicates that he was fully aware of the proper standards, and there is nothing to indicate that he did not apply them. The majority's suggestions to the contrary are simply unfounded.

### 2. *The Majority's Theory of a Shifting Burden of Proof*

The majority also states that the burden of proof was improperly allocated in this case—that once the claimant had shown the existence of a general "animus" against him, then the burden should have been shifted onto WMATA to rebut the inference that its discrimination had been *partly* motivated by the filing of the disability claim. The majority views this perceived error as grounds for a remand of the case. I cannot agree. Neither the factual record in this case nor the statute provides any basis for a remand.

### A. *The Facts*

The factual record reveals the futility of a remand. Having considered all of the evidence, the ALJ found the following:

> [T]here is *no evidence in the record to which I attach any weight that will support a finding that any of the acts or attitudes taken against the Claimant were motivated by animus against him because he filed a compensation claim.* Rather, the testimony of the WMATA witnesses in both hearings has convinced me that *his treatment was the result of an ongoing feeling at WMA-*

*TA, stemming from the public hearing incident, that Mr. Geddes was not a "team player"* and perhaps was considered an undesirable employee. It is clear from the evidence presented by the Claimant that WMATA was aware at least that Mr. Geddes was inquiring about if not actually attempting to return to work. But instead of assisting him, the Employer treated the Claimant as an outcast, undoubtedly intending to induce Mr. Geddes to leave WMATA permanently. However, the language of Section 49 is specified in limiting sanctions to only those situations in which discrimination results because an employee has claimed or attempted to claim compensation.

*On the basis of the evidence presented, I find that the discrimination directed against the Claimant began at the time of the public rate hearings in 1975 and that the Employer's subsequent actions against the Claimant were motivated by general animus against the Claimant, not by the fact that he filed a workmen's compensation claim.*

ALJ Decision at 4 (JA 15) (emphasis added).

This specific finding that the employer's action was "not [motivated] by the fact that he filed a workmen's compensation claim," and the Board's concurrence in that finding, disposes of this case. Quite clearly, the ALJ found on the evidence that the employer's actions against Geddes were motivated by the ill will toward Geddes that arose when the claimant spoke out against WMATA in 1975, and *not* by his filing of a claim. The ALJ found *no evidence* to the contrary. With this specific finding negating the fact that the employer was partly motivated by Geddes' filing his compensation claim—a finding that is fully supported by the administrative record—I cannot see the need, desirability, or justification for a remand. When WMATA had a motivation as strong as existed here to discriminate against an employee who was considered disloyal, and who was once fired because of that alleged disloyalty and only rehired because of pressure, I cannot agree

that "it is reasonable to presume that, unless otherwise explained, the employer's act was at least partially motivated by the employee's claim for compensation." Majority Opinion at 1418. There is no sound reason to manufacture such a presumption in this case. On the record before us, the motivation is completely "otherwise explained." The harassment to which Geddes was subjected before he filed his compensation claim, including the aborted attempt to discharge him, constitutes strong support in favor of a conclusion that filing the compensation claim was *not* the cause of WMATA's subsequent refusal to permit him to return to work. The proper conclusion to draw from that evidence was for the trier of fact, who faced up to the motivation issue and squarely found *no* creditable evidence to support Geddes' Section 49 claim.

B. *The Majority's Misguided Legal Analysis*

Furthermore, even if there were some factual ambiguity in the record, I could not agree that the case ought to be remanded for reconsideration in light of the majority's suggested theory of the shifting burden of proof. As the majority concedes, a Section 49 claimant bears *some* burden of proof, albeit a light one. As the majority must also acknowledge, that burden applies to the motivation element of a Section 49 offense. In the precise language of the statute, the discrimination must result *"because* [the] employee has claimed ... compensation from [the] employer ...." 33 U.S.C. § 948a (1976) (emphasis added). The burden of proof, to the extent that it exists, is where the statute puts it—upon the claimant.

Viewed against the purposes of Section 49, the majority's theory does not make sense. In almost all cases where some discrimination is found—as in that at bar— there will be *some* motive for the discrimination, and very few such motives will be entirely benign. The purpose of Section 49, however, is not to serve as an *all-purpose* restraint on improper employer activi-

ties, but rather to select out one particular motive—retaliation against the filing of a claim—and to render that specific motive unlawful.[1] The mere presence of some *other* "undesirable" motive changes nothing about the purpose or operation of the statute. The notion of general "animus," to which the majority repeatedly refers, may be a convenient summary of the facts of this case, but it is nonetheless a concept alien to the statute under which this case must be decided. I would agree that when a claimant makes an initial showing that the employer's discrimination was *improperly motivated within the particular sense of Section 49*, then the burden of *proceeding* naturally shifts to the party with potential access to information that might rebut that showing. An initial showing of some *other* sort of "improper" motive, however, is immaterial to the claimant's case, and indeed can only tend to aid the defense. The majority's theory that the burden of proof shifts whenever *any* form of general animus or improper motive has been demonstrated can have but one of two practical effects: 1) conversion of Section 49 from a limited legislative provision designed to prevent retaliation against the filing of claims into an all-purpose restraint on employment decisions; or 2) overruling Congress' determination that a claimant must carry some light burden of showing that the motive for the discrimination against him was the one set forth in the statute. In either event, the majority's construction mangles the statute.

---

1. Of course, collective bargaining agreements, federal statutes, state laws, and the Constitution may preclude employment actions based on other employer motivations. Those sources of contractual and legal rights, however, give rise to different cases—cases outside the scope of Section 49.