**Francis V. GEDDES, Jr., Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAM, U.S. DEPARTMENT OF LABOR and Washington Metropolitan Area Transit Authority, Respondents.**

**No. 87–1298.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 25, 1988.
Decided July 15, 1988.

Bernard J. DiMuro, with whom Stephen A. Katz, Alexandria, Va., was on the brief, for petitioner.

John Jeffrey Ross, Atty., Dept. of Labor, with whom Donald S. Shire, Associate Sol., and J. Michael O'Neill, Counsel for Longshore, Dept. of Labor, Washington, D.C., were on the brief for respondent, Director, Office of Workers' Compensation Program, U.S. Dept. of Labor, arguing in favor, of petitioner.

John F. Ward, Washington, D.C., for respondent, Washington Metropolitan Area Transit Authority.

Before BUCKLEY and SENTELLE, Circuit Judges, and PALMIERI* Senior District Judge.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

This case was previously before us in *Geddes v. Benefits Review Board*, 735 F.2d 1412 (D.C.Cir.1984) (Geddes I) on petition to review the Board's denial of Geddes' claimed benefits under section 49 of the Longshoremen's and Harbor Workers' Compensation Act ("the Act"). 33 U.S.C. §§ 901–50 (1976). At that time, we found that the Board failed to apply the correct standard of proof and improperly allocated the burden of proof. We, therefore, vacated the order and remanded the case to the Board. The Board now having reached the same conclusion with a proper application of the standard of proof and assignment of the burden, we affirm.

---

* Of the United States District Court for the Southern District of New York, sitting by designation

## I. BACKGROUND

Our prior opinion *Geddes, supra,* provides a detailed review of the factual background of this case and the procedures followed through the time of that opinion. We need but briefly resketch them here. Geddes originally claimed total temporary disability benefits under the Act for a work-related disability, a nervous condition, arising from harassment occasioned by his having testified against his employer, Washington Metropolitan Area Transit Authority ("WMATA"), intervenor in *Geddes, supra,* and a respondent herein, at a public hearing. Geddes additionally sought backpay on the ground that WMATA discriminated against him in retaliation for his claim, in violation of § 49 of the Act, 33 U.S.C. § 948a (1976), which provides:

It shall be unlawful for any employer ... to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer....

The alleged discrimination was "WMATA's refusal to allow Geddes to return to work from the time of his recovery until June 1980." *Geddes, supra,* at 1415. In order to recover under the cited section, Geddes was required to prove two elements: (1) that the employer committed a discriminatory act, and (2) that the discriminatory act was motivated by animus toward the employee because of the employee's pursuit of his rights under the Act. The Administrative Law Judge ("ALJ") who first heard Geddes' claim received testimony from Geddes that supervisors and other employees of WMATA had frustrated his efforts to return to work but made no explicit determination that WMATA had committed a discriminatory act. Apparently the ALJ found it unnecessary to decide that issue since he made an express finding that WMATA's motivation for its actions was an animus against Geddes arising, not from his compensation claim, but from his earlier public hearings testimony against

pursuant to 28 U.S.C. § 294(d).

WMATA and that the animus had pre-dated the compensation claim, whatever occurred after that claim being only a continuation of prior "general animus." The Benefits Review Board affirmed the ALJ's decision, but we reversed in *Geddes, supra,* concluding that the Board and the ALJ had erred in two respects. First, the ALJ (and the Board) had failed to give Geddes the benefit of the light standard of proof afforded claimants seeking relief under the Act.[1] Second, we held that the Board improperly allocated the burden of proof. It appeared to us that the ALJ had required Geddes to prove that his employer committed a discriminatory act animated by animus and then to separate the animus behind that act from prior animus. We concluded that "[t]he proper rule, ... is that once Geddes proves that WMATA committed a discriminatory act caused by animus, the evidentiary burden of proof should shift to WMATA to prove that its animus was not even partially motivated by Geddes' exercise of his rights under the Act." *Id.* at 1417.

We, therefore, remanded the case for further proceedings, applying the proper allocation and standard of proof, to determine if WMATA had in fact committed a discriminatory act, and if so, if the same was the result of animus within the scope of the Act. Following further proceedings on remand, the ALJ again denied the Section 49 claim, the Board again affirmed, and Geddes has again petitioned this Court for relief.

## II. THE PROCEEDINGS AFTER REMAND

After the decision in *Geddes, supra,* and the resulting remand from the Board to the ALJ, the ALJ reopened the proceedings, reexamined all evidence in the record, took no further evidence, and entered further findings of facts and conclusions. The ALJ expressly adopted the findings and conclusions of the prior decision including a "conclusion that discriminatory acts caused by

animus were perpetrated by WMATA against the Claimant." *Geddes v. Washington Metropolitan Area Transit Authority,* No. 79–DCW–136, OWCP No. 40–125708 at 2 (Joint Appendix at 35). He then stated that he was shifting the burden of proof to WMATA to prove that its animus was not motivated, even in part, by Geddes' exercise of his rights under the Act. However, his more specific findings of fact make it plain that he in fact found no post-claim discriminatory act so that the shifting of the burden was really unnecessary, but certainly not harmful to Geddes. What the ALJ specifically found was that Geddes never in fact reported for duty again. He did make a few perfunctory steps toward returning to work but, none of these was consistent with a genuine effort to make that return. All Geddes' claimed attempts were by telephone. He never sought the medical clearance necessary to return to work after his absence for disability reasons and never sought the driving test necessary for an employee returning after an absence as long as his.

The ALJ further credits the testimony of other WMATA personnel that one or more of the employees told him to get a doctor's certificate and report to his division so that reinstatement could proceed. He never obtained such a certificate but rather left Washington, DC, returned to the home of a relative in New York, and called the Arlington, VA, division of WMATA from there. As the ALJ notes "[f]or anyone who had a strong desire to return to work, this makes no sense." *Id.* at 4 (Joint Appendix at 37).

Finally, the ALJ noted that at the 1980 hearing of this matter, WMATA offered that day to allow Mr. Geddes to come back to work immediately upon presentation of the required medical clearance and passing the driving test. Again, Geddes did not accept the offer but returned to New York and ultimately resigned from WMATA. The ALJ's ultimate finding that he did "not

---

1. "The settled law articulated by the Supreme Court is that although a claimant seeking relief bears the burden of persuasion, the Act must be liberally construed in light of its beneficent and humanitarian purposes.... Th[e] lesser standard of proof requires that inferences be made and doubtful questions of fact be resolved in favor of the employee seeking benefits under the Act." *Geddes, supra* at 1416. (footnotes omitted).

believe that Mr. Geddes had any genuine desire to return to WMATA as a driver and ... accord[ed] his testimony ... no weight," *id.* at 5 (Joint Appendix at 38), is not an erroneous one.

The Benefits Review Board affirmed in *Geddes v. Washington Metropolitan Area Transit Authority*, BRB No. 85–2527 (May 21, 1987) (Joint Appendix at 39), stating correctly "because a Section 49 award cannot be issued without a preliminary showing that a discriminatory act has been committed, the Administrative Law Judge was not required to reach the motivation issue which had been addressed by the U.S. Court of Appeals...." *Id.* at 4 (Joint Appendix 42). It is this decision which we now review.

### III. ANALYSIS

There is no dispute as to the standard of review which we must now apply. As noted in *Geddes I, supra,* our examination is limited to errors of law and findings of fact which are not supported by substantial evidence in the record as a whole. *Voris v. Eikel,* 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5 (1953). If there is substantial evidence supporting a finding, credibility determinations are for the trier of fact and not the reviewing appellate court. *Calbeck v. Strachan Shipping Co.,* 306 F.2d 693 (5th Cir.1962). Each critical finding of fact by the ALJ as affirmed by the Board is supported by evidence in the record. Now that the proper standard and burden of proof have been applied in the original conclusion reached, there is no basis for our disturbing it.

While Geddes argues that the ALJ's conclusion, and therefore the Board's, was flawed in that the ALJ found discrimination motivated by animus but did not have adequate evidence from the respondent to rebut the presumption arising in *Geddes I* that such animus was at least partially the result of the claim, closer examination of the ALJ's opinion and the Board's affirmance reveals that this argument is flawed. The discriminatory conduct arising from animus found by the ALJ was that which was directed at the claimant prior to his claim and causative of the injuries underlying the original claim. The ALJ found no new discriminatory act after the claim itself or at the time of Geddes' alleged attempt to return to work. Therefore, the shifting of the burden of proof was not properly triggered, and the fact that the ALJ recited a triggering of it anyway, while arguably erroneous, is certainly not harmful to Geddes, but rather beneficial to him. Even applying all the liberal standards, the ALJ simply found no credible evidence upon which to base a Section 49 recovery.

Geddes finally argues that the decision of the ALJ after remand is inconsistent with his prior findings and since there is no new evidence in the record cannot rationally have been reached applying a less stringent burden of proof. The alleged inconsistency is the prior finding that WMATA "instead of assisting [Geddes] ... treated the claimant as an outcast undoubtedly intending to induce Mr. Geddes to leave WMATA permanently." Joint Appendix at 15. This, Geddes argues, is inconsistent with the later conclusion that no discriminatory act was committed. In fact, it is not inconsistent. There is no question that WMATA personnel evidenced ill-will toward Geddes and it may be that they intended to prevent him from returning to work. This is not, however, inconsistent with a finding that they did not prevent him from returning to work since he made no effort to do so. By way of analogy, it is not murder to intend to kill someone if the potential victim commits suicide before the would-be murderer ever has the chance to act on that intent.

### IV. CONCLUSION

For the reasons set forth above, the petition is denied and the decision of the Board affirmed.